<u>**United States District Court - District of Minnesota - Sixth Division**</u>

**Civil Action, File Number: 06-cv-01274**

Gail Bredemus, Leo Anderson as Trustee for the Heirs
And Next-of-kin of Patricia Anderson, deceased, Nancy Benjamin,
Stacy Smith as Trustee for the Heirs and Next-of-kin
of Donna Budreau, deceased, Carol Glidden,
Yvonne Littlewolf, Donna Morgan,
Donna Oachs, Simone Pemberton, Brenda Smith,
Sharon Villier, Linda Herrera, Lashelle Masten,
Larry Swanson, Leonard Swanson, Lonnie Swanson,
Loren Swanson and Luther Swanson

                        Plaintiffs,

   -vs-                                                                                         **THIRD AMENDED**
                                                                                  **COMPLAINT**

International Paper Company, a New York
corporation, f/k/a Champion International
Corporation, f/k/a St. Regis Paper
Company, f/k/a Wheeler Lumber Bridge
and Supply Company;
       and
Burlington Northern and Santa Fe Railway
Company, a Delaware corporation, f/k/a
Great Northern Pacific & Burlington Lines,
f/k/a Great Northern Railway Company,

                        Defendants.

       COME NOW, The Plaintiffs and for their cause of action allege:

**Jurisdictional Statement**

1.      Plaintiffs are and at all times relevant hereto have been citizens of the state of Minnesota.

2.      Defendant St. Regis Corporation, formerly St. Regis Paper Company, is a business incorporated under the laws of the state of New York and was merged into Defendant Champion International Corporation on or about October 16, 1985.

3. Defendant Champion International Corporation is a business incorporated under the laws of the state of New York and was merged into Defendant International Paper Company on or about April 11, 2001.

4. Defendant International Paper Company is a business incorporated under the laws of the state of New York.

5. Defendant Great Northern Railway Company is an inactive corporation incorporated under the laws of the state of Minnesota and was merged into Great Northern Pacific & Burlington Lines, Incorporated, a Delaware corporation, on or about March 2, 1970.

6. Defendant Burlington Northern & Sante Fe Railway Company is a business incorporated under the laws of Delaware and is the former Northern Pacific & Burlington Lines, Incorporated, having changed its name on or about April 15, 1997.

7. The matter in controversy between each plaintiff and defendants greatly exceeds $75,000.

8. This court has jurisdiction of this matter pursuant to Article III Section 2 of the United States Constitution and 28 USC §1332(a)(1).

## GENERAL FACTUAL ALLEGATIONS

9. About 1955 Wheeler Lumber Bridge & Supply Company ("Wheeler") leased land from Burlington Northern & Santa Fe Railway Company ("BNSF") in the City of Cass Lake, Cass County, Minnesota, on which it subsequently built and operated a plant ("Cass Lake Plant") that chemically treated wood products until operations ceased about September 1985.

10.     The Cass Lake Plant consisted of 41 acres along a railroad right of way owned by BNSF and an additional parcel of 26 acres south of the site. The Cass Lake Plant consisted of several buildings, storage areas for untreated and treated timber, a sludge pond, above and below ground storage tanks and piping, processing equipment and two "tee pee" burners, which were used to burn waste products.

11.     During operation the Cass Lake Plant processed and chemically treated timber into wood products, including telephone poles, bridge members, guardrail posts, and other products for building construction.

12.     The wood products were treated by putting them in cylinders 120 to 150 feet in length and 7 feet in diameter and exposing them to certain preservative chemical mixtures under high temperatures and pressure.

13.     The Cass Lake Plant used two, and later three, distinct chemical mixtures to treat the wood products. One mixture was creosote. Another mixture consisted of pentachlorophenol ("PEN") in powder or flake form, to which No. 2 fuel oil was added. Later a premixed PEN compound replaced use of the dry chemical. In later years a third method called the "chemnite," which used ammonia and other chemicals, was used. From the inception of the chemnite process until the plant closed in late 1985, all three timber treatment methods were used. The treatment process required a significant amount of oil and steam, and took between 4 to 24 hours to treat the timber placed into the cylinders.

14.     In its operations, the Cass Lake Plant released hazardous substances and hazardous waste contaminated with toxic chemicals, including, but not limited to dioxin,

creosote, PEN, arsenic, polyaromatic hydrocarbons ("PAH"), fuel oil and their hazardous by-products, into the soil, groundwater and the air.

15. In the curing process, steam fed into the cylinders would condense and mix with residue from the cylinder's previous uses. The water was collected in a "honey wagon," where it would, on occasion, be dumped into the town sewer. From there, the water entered the underground water, where it was carried beyond the confines of the plant and entered surrounding wells and waterways, including tributaries of the Mississippi River, Cass Lake and surrounding waterways and lakes.

16. The water collected from the cylinders was contaminated with various chemicals including, but not limited to, PEN and dioxin. The deposit of the contaminated water in the town sewer and other areas permeating the water table led to the contamination of the above-described surrounding wells and waterways.

17. The wood treatment process created a variety of waste; polluted land and water from chemicals dripping from the tanks and treated wood, sludge cleaned from the cylinders, waste and trash from the "tee pee" burners, and other fumes emanating from the routine and ordinary operation of the plant. These waste products include, but are not limited to, various congeners of dioxins, dibenzo furans, benzo (a) anthracene, benzo (a) pyrene, dibenz(ah)anthracene, unreacted PEN, and other noxious and poisonous substances.

18. Heating the wood preservative chemicals under high pressure created various chemical "by-products." The chemicals used in the operation and maintenance of the plant, including but not limited to, creosote, PEN, PAH, arsenic, No. 2 fuel oil, ammonia,

solvents, gasoline and other products, were likewise allowed to contaminate the Cass Lake Plant site and surrounding areas.

19.     In addition to the foregoing, it was the custom and practice for the Cass Lake Plant to sell waste timber, including treated and untreated wood, to people living in the surrounding neighborhood, who used the timber, including treated timber in their homes for cooking fuel and heating.  The burning of treated timber caused the release and creation of various noxious and poisonous chemicals, including, but not limited to, dioxin, which then contaminated the surrounding home and yards.

20.     At all times relevant herein, the Cass Lake Plant premises were unfenced, contained no warning signs, and had no practical means to limit the access of the public to the plant, which included children living in the surrounding neighborhood.

## PLAINTIFFS

21.     Plaintiffs had continuous exposure to the site during the times the Cass Lake Plant was in operation and many continue to be exposed to the residual effects from the contamination after the mill closed.

22.     The names of the Plaintiffs are as follows:

| | | | |
|---|---|---|---|
| 1. | Gail Bredemus | 2. | Leo Anderson, Sr., as Trustee for the Heirs and Next-of-kin of Patricia Anderson, Deceased |
| 3. | Nancy Benjamin | 4. | Stacy Smith, as Trustee for the heirs and next-of-kin of Donna Budreau, Deceased |
| 5. | Carol Glidden | 6. | Yvonne Littlewolf |
| 7. | Donna Morgan | 8. | Donna Oachs |

| | | | |
|---|---|---|---|
| 9. | Simone Pemberton | 10. | Brenda Smith |
| 11. | Sharon Villier | 12. | Linda Herrera |
| 13. | Lashelle Masten | 14. | Larry Swanson |
| 15. | Leonard Swanson | 16. | Lonnie Swanson |
| 17. | Loren Swanson | 18. | Luther Swanson |

23.  At all times material hereto, Plaintiff Stacy Smith, was the son of Decedent, Donna Budreau.

24.  Plaintiff Stacy Smith was appointed Trustee by Order of the Court dated June 27, 2006 for the heirs and next-of-kin of Donna Budreau, Decedent, who was born on July 3, 1938 and died on May 13, 2006.

25.  At all times material hereto, Plaintiff Leo Anderson, was the spouse of Decedent, Patricia Anderson.

26.  Plaintiff Leo Anderson, Sr., was appointed Trustee by Order of the Court dated January 5, 2010 for the heirs and next-of-kin of Patricia Anderson, Decedent, who was born on February 27, 1947 and died on May 9, 2009.

### Count I: General Negligence – International Paper

27.  Plaintiffs incorporate herein by reference all the foregoing paragraphs and state and allege as follows:

28.  Defendant International Paper, directly or indirectly, negligently manufactured, packaged, distributed, transported, sold or disposed of hazardous substances, pollutants and/or contaminants, as defined by Minn. Stat. §115B.02 subd. 8 and elsewhere by name in this Complaint, when the Defendant knew, or in the exercise of

ordinary care, should have known that these hazardous substances, pollutants and/or contaminants posed a significant risk to Plaintiffs' health and well-being, which risks were not known to Plaintiffs.

29.     At all times material hereto, Defendant International Paper had a duty to Plaintiffs to exercise reasonable care in the manufacturing, distributing, transporting, selling or dumping of hazardous substances, pollutants and/or contaminants to, on or near the Cass Lake Plant.

30.     Defendant International Paper breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiffs in numerous ways, including but not limited to, the following:

   a. Failed to provide adequate warnings to the general public that would alert the Plaintiffs and other residents to the potential risks of coming in contact with these hazardous substances, pollutants and/or contaminants either in their natural form or as a by-product.

   b. Failed to enclose the Cass Lake Plant site to prevent the general public from entering into an environment where known hazardous substances, pollutants and/or contaminants were used in the daily course of business.

   c. Failed to appropriately dispose of the hazardous by-products created in the normal course of business by dumping these products into the soil and groundwater polluting nearby waterways and land inhabited by Plaintiffs and other residents.

   d. Failed to protect the Plaintiffs and other residents from these hazardous substances, pollutants and/or contaminants by selling or giving away wood

7

scraps treated with these hazardous substances for general household use, including, but not limited to, heating of houses and cooking.

31.     Defendant International Paper knew or should have known that these hazardous substances, pollutants and/or contaminants caused unreasonably dangerous risks and serious injuries, including cancer and neurological and physical ailments of which Plaintiffs and other residents would not be aware. Defendant nevertheless continued to allow the general public on the Cass Lake Plant site knowing that there were hazardous substances that could cause serious injuries.

32.     As a direct and proximate result of the negligence and breach of Defendant International Paper, Plaintiffs suffered serious injuries. Defendant owed a duty to Plaintiffs to use reasonable care in their actions. Defendant's failure to use reasonable care proximately caused Plaintiffs' injuries.

33.     As a direct and proximate result of the negligence and breach of Defendant International Paper, Donna Budreau thereafter died.

34.     As a direct and proximate result of the death of Donna Budreau, the heirs and next-of-kin have suffered the loss of guidance, counsel, aide, comfort, assistance, protection and support and have otherwise suffered damage and mental anguish and pecuniary loss, paying out certain sums of money providing for a proper burial, all to their damage in an undeterminable sum at this time.

35.     As a direct and proximate result of the negligence and breach of Defendant International Paper, Patricia Anderson, thereafter died.

36.     As a direct and proximate result of the death of Patricia Anderson, the heirs and next-of-kin have suffered the loss of guidance, counsel, aide, comfort, assistance,

protection and support and have otherwise suffered damage and mental anguish and pecuniary loss, paying out certain sums of money providing a proper burial all to their damage in an undeterminable sum at this time.

37. As a further direct and proximate result of Defendant International Paper's conduct, Plaintiffs suffered and will continue to sustain serious injuries, economic loss, pecuniary loss, mental anguish and other compensable injuries.

### Count II: Minnesota Statutes Chapter 115B Strict Liability – International Paper

38. Plaintiffs incorporate herein by reference all the foregoing paragraphs and state and allege as follows:

39. Among other things, the Cass Lake Plant owned and operated by Defendant International Paper in Cass Lake, Minnesota, consisted of buildings, equipment, pipelines, pits, ponds, storage containers and areas where hazardous substances, pollutants and/or contaminants were deposited and stored and thereby constitutes a "*facility*" under Minnesota Statutes §115B.02 subd. 5.

40. Defendant International Paper owned and operated the Cass Lake Plant when *hazardous substances*, *pollutants* and/or *contaminants*, as defined by Minnesota Statutes §115B.02 subd. 8 and described elsewhere by name in this Complaint, became located on the site.

41. While Defendant International Paper owned and possessed the hazardous substances, pollutants and/or contaminants it disposed of the substances in numerous ways, including, but not limited to, the following:

    a. Dumped the substances into pits located on the plant property;

    b. Dumped the substances into unlined ponds located on the plant property;

    c. Sprayed the substances onto plant roads, local residential roads and vegetation on plant property;

    d. Dumped the substances into the dump owned by the City of Cass Lake;

    e. Burned the substances on plant property and at the dump owned by the City of Cass Lake;

    f. Burned treated lumber scraps, chemical bags and containers in Tee-Pee burners located on plant property and otherwise burned treated scrap material;

    g. Buried treated scrap material and other contaminated material on plant property;

    h. Sold and gave treated lumber scrap materials to local residents to burn for dwelling heat and cooking;

    i. Dumped the substances into a manhole leading to the wastewater treatment plant owned by the City of Cass Lake; and

    j. Spilled the substances on plant property, local residential property and local residential roads during the disposal process and at other times.

42. The disposal described in the preceding paragraph constitutes a **release** of the substances as defined by Minnesota Statutes §115B.02 subd. 15.

43. The release of the described substances occurred before and continued after July 1, 1983 and consisted of substances that became located at the facility before and after July 1, 1983.

44. As a result of the releases described above, Plaintiffs suffered significant exposure to the hazardous substances, pollutants and/or contaminants through the

following means, including but not limited to, direct contact with contaminated soil, inhalation and ingestion from contaminated food and water.

45.	As a direct result of exposure to the substances released by Defendant International Paper, Plaintiffs have suffered numerous health afflictions including, but not limited to, various forms of cancer and neurological and physical injuries as described hereafter.

46.	Pursuant to Minnesota Statutes §115B.05 Defendant International Paper is strictly liable for the harm suffered by Plaintiffs.

### Count III: Minnesota Statutes Chapter 115B Strict Liability – BNSF

47.	Plaintiffs incorporate herein by reference all the foregoing paragraphs and state and allege as follows:

48.	At all times relevant hereto Defendant BNSF, directly or through its predecessors (hereinafter collectively referred to as BNSF), was the owner and lessor of all or a substantial portion of the property on which Defendant International Paper operated the described Cass Lake Plant.

49.	Defendant BNSF owned all or a substantial portion of the property on which Defendant International Paper operated the described Cass Lake Plant during the time that **hazardous substances, pollutants, and/or contaminants** were placed or became located at the plant facility.

50.	Defendant BNSF owned all or a substantial portion of the property on which Defendant International Paper operated the described Cass Lake Plant during the time that **hazardous substances, pollutants, and/or contaminants** were **released** from the plant facility.

51.     During its ownership of the Cass Lake Plant property Defendant BNSF knowingly permitted Defendant International Paper to make regular use of the property for the disposal of waste.

52.     During its ownership of the Cass Lake Plant property Defendant BNSF knowingly permitted Defendant International Paper to make use of the property for the disposal of hazardous waste.

53.     During its ownership of the Cass Lake Plant property Defendant BNSF knowingly permitted Defendant International Paper to engage in the business of generating, transporting, and storing hazardous substances at the site.

54.     Before and during its ownership of the Cass Lake Plant property and while Defendant International Paper was conducting wood treatment operations thereon, Defendant BNSF was itself engaged in the operation of manufacturing treated railroad ties, bridge members and other products at plants owned or operated by it in Baxter, Minnesota and at other locations, using the same or similar chemicals used by Defendant International Paper and thereby knew or should have known of the nature and toxicity of the chemicals used by and waste produced by Defendant International Paper at the Cass Lake Plant.

55.     As a direct and proximate result of acts and omissions set forth in this count, Defendant BNSF caused or significantly contributed to the health afflictions and damages to Plaintiffs including, but not limited to, those set forth hereafter.

56.     Pursuant to Minnesota Statutes §115B.05 Defendant BNSF is strictly liable for the harm suffered by Plaintiffs.

### **Count IV: Strict Liability – Ultrahazardous Activity – International Paper**

57. Plaintiffs incorporate herein by reference all the foregoing paragraphs and state and allege as follows:

58. Defendant International Paper's use, manufacture, and disposal methods of hazardous substances, pollutants and/or contaminants on and adjacent to the Cass Lake Plant property posed a high degree of risk of harm of harm to Plaintiffs and others similarly situated.

59. Defendant International Paper could not eliminate the risk posed by the use, manufacture, and disposal methods of hazardous substances, pollutants and/or contaminants on and adjacent to the Cass Lake Plant property by the exercise of reasonable care.

60. Defendant International Paper's use, manufacture, and disposal methods of hazardous substances, pollutants and/or contaminants on and adjacent to the Cass Lake Plant property was not a matter of common usage of the land, was inappropriate to the location in which it was carried on, and the extent of the risk was out of proportion to the value of the activity, if any, to the surrounding community.

61. As a direct and proximate result of the ultrahazardous activity of Defendant International Paper, Plaintiffs have suffered afflictions and damages, including but not limited to, those set forth hereafter.

62. Defendant International Paper is strictly liable at common law for the harm caused by its ultrahazardous activities.

## Count V: Attractive Nuisance – International Paper

63.     Plaintiffs incorporate herein by reference all the foregoing paragraphs and state and allege as follows:

64.     During the time Defendant International Paper operated the Cass Lake Plant, it stored treated lumber containing toxic chemicals in numerous piles on the property owned by it and the property leased from Defendant BNSF, created ponds in which it stored spent toxic chemicals, and piled dirt containing toxic chemicals, all of which were artificial conditions upon the property.

65.     Defendant International Paper knew or had reason to know that Plaintiffs and other children were likely to trespass upon the property and play in, on and around these artificial creations.

66.     Defendant International Paper knew or should have known that the toxic chemicals present in the treated lumber, ponds and dirt piles posed an unreasonable risk of injury, harm or death to the children and that the children were too young to understand the risk of harm posed by the artificial conditions.

67.     The benefit of keeping the artificial conditions open and exposed were negligible compared to the risks posed to the children.

68.     As a direct and proximate result of the attractive nuisances maintained by Defendant International Paper, Plaintiffs have suffered afflictions and damages, including but not limited to, those set forth hereafter.

## Count VI: Civil Battery – International Paper

69.     Plaintiffs incorporate herein by reference all the foregoing paragraphs and state and allege as follows:

70. The conduct of Defendant International Paper in causing the persons of the Plaintiffs to be touched with the instrumentality of noxious chemicals and poisons, where they would remain present for many months and possibly years, without their informed consent, constitutes a civil battery.

71. Defendant International Paper is strictly liable for the consequences of such unauthorized touching, whether foreseeable or not at the time of such battery.

72. As the direct and proximate result of such unauthorized touching, Plaintiffs have suffered injuries, including but not limited to, those set forth hereafter.

### INJURIES COMPLAINED OF AS TO ALL COUNTS ABOVE

73. The Plaintiffs incorporate herein by reference all foregoing paragraphs.

74. As a direct and proximate result of the exposure to the harmful and deleterious wood processing chemicals and products above-described, all Plaintiffs have sustained permanent and severe injuries, including but not limited to various cancers, neurological and physical injuries and their attendant complications and even death.

75. As a result of health afflictions caused by the described exposure, each Plaintiff has in the past and will in the future incur substantial medical expenses for the care and treatment of their afflictions; has in the past and will in the future suffer a substantial loss of earnings and earning capacity; has in the past and will in the future incur great expense for the purchase of household and daily living services; has in the past and will in the future endure great pain and conscious suffering and disability all in an amount substantially in excess of $75,000 per Plaintiff.

## **PRAYER FOR RELIEF**

Plaintiffs pray for relief as follows:

1. Each Plaintiff, except heirs or next of kin, be awarded such sums as may be required to cover costs incurred for past and future medical expenses for the care and treatment of their afflictions; past and future loss of earnings and earning capacity; past and future expenses for the purchase of household and daily living services; past and future pain and suffering and disability all in an amount substantially in excess of $75,000 per Plaintiff.

2. That the heirs and next-of-kin be awarded such sums required to cover burial costs.

3. That the heirs and next-of-kin be awarded damages for their loss of guidance, counsel, aide, comfort, assistance, protection, support, mental anguish and pecuniary loss all in an undeterminable sum at this time.

4. Plaintiffs be awarded their costs and disbursements incurred herein.

5. For such other relief as may be just and equitable.

## **DEMAND FOR JUDGMENT**

**WHEREFORE,** The Plaintiffs, and each of them, demand judgment against all Defendants, jointly and severally for compensatory damages as to all Counts as set forth herein in an amount in excess of Seventy-Five Thousand ($75,000) Dollars, as a jury may award, whether for one Count or a combination thereof, plus interest as permitted by law, and costs.

## **DEMAND FOR JURY TRIAL**

The Plaintiffs demand a trial by jury as to each and every Count of the Plaintiffs' Complaint herein.

Date: 1/19/10                                   S/James P. Carey
                                                James P. Carey, (MN #180555)
                                                Attorney for Plaintiffs
                                                Sieben, Grose, Von Holtum & Carey
                                                800 Marquette Avenue, Suite 900
                                                Minneapolis, MN  55402
                                                (612) 333-4500

Date: 1/19/10                                   S/William J. Delmore
                                                William J. Delmore (ND #03212)
                                                Attorneys for Plaintiffs
                                                Kelsch, Kelsch, Ruff & Kranda
                                                103 Collins Ave., P.O. Box 1266
                                                Mandan, ND  58554-1266
                                                (701) 663-9818

Date: 1/19/10                                   S/Gary M. Hazelton
                                                Gary M. Hazelton (MN #165414)
                                                Attorneys for Plaintiffs
                                                Hazelton Law Firm
                                                677 Anne Street
                                                PO Box 1248
                                                Bemidji, MN  56619
                                                (218) 444-4529

PI1#507298v1